**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**THOMAS M. FRANK, D.C.,**

                            **Plaintiff,**

**v.**                                                              **23-CV-670-JLS(HKS)**

**D'YOUVILLE UNIVERSITY AND**
**DYC CHAPTER OF THE AMERICAN**
**ASS'N OF UNIVERSITY PROFESSORS**

                            **Defendant.**

_____

## REPORT, RECOMMENDATION, AND ORDER

This case was referred to the undersigned by the Hon. John L. Sinatra, Jr., pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #5. Plaintiff brings this hybrid action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), alleging claims arising out of the termination of his employment. Dkt. #1-2, ¶ 21.

Currently before the Court are defendants' motions to dismiss. Dkt. ##3, 7. For the following reasons, it is recommended that the motions be granted.

## BACKGROUND

Plaintiff Thomas M. Frank, D.C. is a chiropractor who was employed by D'Youville University ("DYU") as a professor and clinician at DYU's campus and at an off-site clinic in partnership with the Erie County Medical Center ("ECMC"). Dkt. #1-2, ¶¶ 1, 7.  Plaintiff was a member of the DYC Chapter of the American Association of University Professors ("DYC-AAUP" or "the union"), a labor union which represents full-time faculty

at DYU. Dkt. #1-2, ¶¶ 3-5, 8. DYU and DYC-AAUP were parties to a collective bargaining agreement ("CBA"). Dkt. #1-2, ¶¶ 5-6.[1]

Plaintiff alleges that an "intern/student" made a complaint about plaintiff's "availability and accessibility while at the clinic located at ECMC." Dkt. #1-2, ¶ 9. The university began an investigation, and, on June 29, 2022, plaintiff and his union representative met with the DYU administration. Dkt. #1-2. ¶¶ 10-11.

On October 17, 2022, plaintiff received an email from the President of DYU advising him that the university was terminating his employment and medical benefits pursuant to Article X of the CBA. Dkt. #1-2, ¶ 12. On December 20, 2022, the union advised plaintiff's counsel that the union would not be pursuing arbitration in the matter. Dkt. #1-2, ¶ 12.

Plaintiff filed suit against DYU and DYC-AAUP in the Supreme Court of the State of New York, County of Erie, on April 28, 2023. Dkt. #1-2. Plaintiff's complaint alleges the following claims against DYU: (1) breach of the collective bargaining agreement pursuant to § 301; (2) breach of the duty of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and

---

[1] Because plaintiff premises his claims on various provisions of the CBA, the Court may properly consider it in adjudicating the current motions. *See Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp.2d 176, 193 (E.D.N.Y. 2010) (in resolving a Rule 12(b)(6) motion, court may properly consider documents deemed integral to the complaint, whether incorporated by reference or quoted therein) (citations omitted).

(5) unjust enrichment. Dkt. #1-2, ¶¶ 22-43. Against DYC-AAUP, plaintiff alleges breach of the duty of fair representation. Dkt. 1-2, ¶¶ 44-45.

DYU, with the union's consent, removed the action to this Court on June 16, 2023, pursuant to  28 U.S.C. §§ 1331 and 1446. Dkt. #1.

On July 11, 2023, DYU filed a motion to dismiss counts two through five of plaintiff's complaint. Dkt. # 3. On July 17, 2023, the union filed its own motion to dismiss in which it joins DYU's motion and also argues that plaintiff has insufficiently pled that the union breached its duty of fair representation in its handling of plaintiff's termination.  Dkt. #7.

Plaintiff filed responses to the motions to dismiss, Dkt. ##12-4, 12-5, and, on September 8, 2023, plaintiff filed an affidavit in which he makes additional allegations regarding his claims. Dkt. #14. Defendants then filed their replies. Dkt. ## 15, 16.

## DISCUSSION AND ANALYSIS

### Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from

conceivable to plausible." *Twombly*, 550 U.S. at 570. To survive dismissal, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 306 (2d Cir. 2022).

On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016). However, a court does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

## **Counts Two, Three and Four**

DYU argues in its motion to dismiss that plaintiff's claims for breach of the duty of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotion distress are all preempted by § 301 of the LMRA. Dkt. #3-3, pp. 10-13.

Plaintiff concedes in his response that these claims are, in fact, preempted. Dkt. #12-4, p. 4.

It will thus be recommended that counts two, three, and four of plaintiff's complaint be dismissed with prejudice. *See Arnold v. Beth Abraham Health Servs., Inc.*, No. 09 Civ. 6049 (DLC), 2009 WL 5171736, at *5 (S.D.N.Y. Dec. 30, 2009) (noting that

any "state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301") (citation and internal quotations omitted).

### Unjust Enrichment

DYU argues that plaintiff's claim for unjust enrichment is also preempted by the LMRA. Dkt. #3-3, pp. 13, 17-18. Plaintiff counters that this claim is not preempted because it does not require interpretation of the CBA; instead, the claim arises from services that plaintiff performed at DYU's request outside the scope of the CBA. Dkt. #12-4, pp. 6-8.

"[S]tate law claims arising out of allegations of breach of contract or tort liability are preempted by Section 301 if they are inextricably intertwined with consideration of the terms of [a] labor contract." *Shearon v. Comfort Tech Mech. Co., Inc.*, 936 F.Supp.2d 143, 152 (E.D.N.Y. 2013) (citation and internal quotations omitted). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or [be] dismissed as pre-empted by federal labor-contract law." *Id.*

"However, the Supreme Court has cautioned that state law claims involving mere consultation of a CBA, rather than interpretation of a CBA, do not lead to Section 301 preemption." *Id.* (citing *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994)). "Ultimately, it is 'the legal character of a claim, as independent of rights created under the [CBA], that

decides whether a state cause of action may go forward.'" *Id.* at 153 (quoting *Livadas*, 512 U.S. at 123-24).

"Under New York law, a party claiming unjust enrichment must establish three elements: (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Id.* (citation and internal quotations omitted).

In support of this claim, plaintiff alleges that he "performed all of his contractual obligations for DYU under the collective bargaining agreement," and that "DYU was unjustly enriched due to members of the administration asking Plaintiff to save their chiropractic program by rewriting the clinic work, compile data and writing reports to meet the Council on Chiropractic Education requirements without compensation to the Plaintiff." Dkt. #1-2, ¶¶ 40-41. He further alleges that DYU was unjustly enriched "by using Plaintiff to rebuild relationships with Erie County Medical Center to keep their onsite clinic open without compensation to Plaintiff" and "by asking Plaintiff to use his private practice on Preceptorship when DYU needed Preceptors for its interns without compensation to Plaintiff." Dkt. #1-2, ¶¶ 42-43.

In his memorandum in opposition, plaintiff argues that the services he performed which are the basis for this cause of action "are not covered by the CBA

agreement." Dkt. #12-4, p. 6. How would the Court verify that assertion? The answer is clear: by looking to the CBA.

Indeed, the CBA contains several provisions that pertain to the duties, expectations, and salaries of DYU professors and clinical faculty, including non-teaching expectations for clinical faculty such as "Scholarship and Professional Activity" and "Effective College and Community Service." Dkt. #12-1, pp. 22-23 (Instructional Load); pp. 48-51 (Clinical Faculty); pp. 61-62 (Salaries); pp. 65-66 (Academic Schedule); p. 72 (Faculty Overload and Summer Session Teaching).

It is not clear whether the additional services that plaintiff alleges he performed fall, either explicitly or implicitly, within the duties and expectations set forth in the above provisions. Resolution of plaintiff's unjust enrichment claim would thus require the Court not merely to consult the CBA, but to interpret its terms. The claim is thus preempted by § 301 of the LMRA. *See Stolarik v. The New York Times Co.*, 323 F. Supp.3d 523, 545 (S.D.N.Y. 2018) (plaintiff's unjust enrichment claim would require court to apply terms of CBA and was thus preempted); *Shearon*, 936 F. Supp.2d at 153-54 (unjust enrichment claim preempted because it would require court not just to consult the terms of the CBA, but to analyze them).

A district court case from outside this Circuit is illustrative. In *Cefarrati v. JBG Props., Inc.*, 75 F. Supp.3d 58 (D.D.C. 2014), the plaintiff, who was employed as the Chief Engineer on a property-development project, alleged that his employer was unjustly

enriched when plaintiff performed work beyond the scope of his job duties as set forth in a CBA between the employer and a union. The Court found that plaintiff's unjust enrichment claim was completely preempted:

> The CBA is vital: It provides the baseline scope of employment for which Mr. Cefarrati admittedly was compensated. Establishing that baseline is a necessary precondition to deciding whether, and to what extent, Mr. Cefarrati performed work beyond the scope of his employment and thereby conferred a benefit on JBG that was unjustly retained.

*Id.* at 65. *See also Collins v. Veolia ES Indus. Servs., Inc.*, Case No. 4:15-CV-00743-AGF, 2015 WL 8663994, at *6 (E.D. Miss. Dec. 14, 2015) (plaintiffs' claims for unjust enrichment based on uncompensated travel time preempted by § 301 because CBA addressed work-related travel). This reasoning applies equally here.

In his memorandum, plaintiff argues in the alternative that he should be permitted to amend his complaint to replead his unjust enrichment claim. Dkt. #12-4, p. 8 ("Plaintiff could supplement his complaint with additional facts evidencing requests for performance of Plaintiff by the Defendant that are not contemplated under the terms of the CBA."). This argument is not well taken.

First, Loc. R. Civ. P. 7 requires any party seeking relief to file a motion and notice thereof, and Loc. R. Civ. P. 15(a) requires any movant seeking to amend a pleading to "attach an unsigned copy of the proposed amended pleading as an exhibit to the motion." Plaintiff has not complied with these rules.

Second, plaintiff does not explain how any amendment could state his unjust enrichment claim in a way that would not require the Court to interpret the CBA. Amendment would thus not remove the preemption bar.

It will thus be recommended that plaintiff's unjust enrichment claim be dismissed with prejudice and that plaintiff's request to amend be denied.

## Plaintiff's § 301 Claim Against the Union

To establish a hybrid § 301/duty of fair representation claim, "a plaintiff must make the dual showing that (1) the employer breached a collective bargaining agreement; and (2) the union breached its duty of fair representation to the union member." *Jones v. SEIU Local 1199*, No. 08-CV-6179-CJS, 2009 WL 5171882, at *6 (W.D.N.Y. Dec. 22, 2009) (citation omitted). Both elements must be established to prevail against either defendant. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983).

A union breaches its duty of fair representation when its conduct is arbitrary, discriminatory, or in bad faith, and there is a causal connection between its wrongful conduct and the plaintiff's injuries. *Eckert v. United Auto. Workers, Local Union 897*, No. 04-CV-538S, 2012 WL 638810, at *5 (W.D.N.Y. Feb. 27, 2012) (citations omitted). A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67 (1991) (citation and internal quotations omitted).

"This wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Eckert*, 2012 WL 638810, at *5 (citation and internal quotations omitted). Thus, a union does not breach its duty of fair representation where it fails to process a meritless grievance, fails to process a grievance due to error in evaluating its merits, engages in mere negligent conduct or errors in judgment, or decides not to arbitrate a grievance. *Id.*

"To state a claim for relief on a hybrid section 301/ duty of fair representation claim, the [plaintiff] is required to articulate specific facts demonstrating bad faith, discrimination or arbitrariness on the part of the union." *Jones*, 2009 WL 5171882, at *6 (citation omitted).

Plaintiff's claim against the union is premised on his allegation that "DUYC-AAIUP breached its duty of fair representation to the Plaintiff by arbitrarily refusing to pursue a grievance on the Plaintiff's behalf." Dkt. #1-2, ¶ 45. Plaintiff repeats this theory in his memorandum in opposition to the union's motion to dismiss. Dkt. #12-5, p. 7 ("DYC-AAUP had an obligation to take an appeal to arbitration on the Plaintiff's behalf.").

However, a "union member does not have an absolute right to have a grievance arbitrated. Rather, a union's decision to settle or proceed to arbitration is a discretionary determination to be made by the union and does not breach the duty of fair representation." *Jones*, 2009 WL 5171882, at *8 (citation and internal quotations omitted).

Notably, plaintiff does not allege that he ever even asked the union to proceed to arbitration. Rather, plaintiff relies on emails in which his counsel, months later, asked the union representative whether the union had pursued arbitration. Dkt. #12-3. These documents are extraneous to the pleadings and thus not properly considered at the Rule 12 stage, but in any event, they would not strengthen this claim.

Plaintiff has failed to allege any facts from which one could reasonably infer that the union's decision not to pursue arbitration was the product of "hostility, discrimination, bad faith, dishonesty, or arbitrary exercise of discretion." *Gold v. Local Union No. 888 U.F.C.W., AFL-CIO*, 758 F. Supp. 205, 208 (S.D.N.Y. 1991).

In his opposition memorandum and in an affidavit, plaintiff relies on new factual assertions regarding his pay and work schedules and alleged unfair enforcement of the CBA dating back to 2017. Dkt. #12-5, pp. 6; Dkt. #14. Putting aside that these allegations are not found in the complaint and thus not properly before the Court, any claims premised on such allegations would be untimely because § 301 claims are subject to a six-month statute of limitations. *Jones*, 2009 WL 5171882, at *7 (citing *DelCostello v. Int'l Bd. of Trustees*, 462 U.S. 151 (1983)). This case was filed on April 27, 2023, Dkt. #1-2, so these additional allegations describe events which are well outside the limitations period.

Because plaintiff fails to state a § 301 claim against the union for breaching its duty of fair representation, his hybrid claim against DYU in count one also cannot proceed. *See White v. White Rose* Food, 237 F.3d 174, 183 (2d Cir. 2001) ("Moreover, because proof of a hybrid § 301/DFR claim requires proof of violations by both the union and the employer, . . . plaintiffs' failure to establish their DFR claim against the union means that their hybrid § claim/DFR claim against White Rose necessarily fails as well.") (citation omitted); *Jones*, 2009 WL 5171882, at *6 ("Because the two claims against the employer and union are 'inextricably interdependent,' a plaintiff's ability to sue their employer is contingent on the threshold showing that the union breached its duty of fair representation.") (citing *United Parcel Serv, Inc. v. Mitchell*, 451 U.S. 56, 62 (1981)). *See id.* at *8 ("[I]f the Union is successful in showing that it did not breach its duty of fair representation, then the Court need not consider whether the [employer] breached the [CBA].") (citation omitted). *See also Beckman v. U.S. Postal Serv.*, 79 F. Supp.2d 394, 400-01 (S.D.N.Y. 2000) ("Therefore, because "the Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against [his] former employer for improper discharge," if the plaintiff is unable to prove that the union breached its duty of fair representation, there will be no need to consider whether the employer violated the CBA.") (citing *United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 62 (1981)); *Gold v. Local Union No. 888 U.F.C.W., AFL-CIO*, 758 F. Supp. 205, 207 (S.D.N.Y. 1991) ("Plaintiff has standing to bring such an action has against the Company based on a breach of the

collective bargaining agreement only if the union has breached its fair duty of representation.") (citing *Vaca v. Sipes*, 386 U.S. 171, 186 (1967)).[2]

Finally, plaintiff again asks in the alternative for leave to amend his complaint. Dkt. #12-5, p. 22. As noted above, however, plaintiff has not complied with the local rules regarding such amendments, and the extraneous information on which he relies does not cure the deficiencies discussed herein.

It will thus be recommended that plaintiff's § 301 claim be dismissed without prejudice and that his request for leave to amend be denied.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motions to dismiss (Dkt. ## 3, 7) be granted; that counts two through five of the complaint be dismissed with prejudice; and that count one and the unnumbered claim against the union be dismissed without prejudice. It is further recommended that plaintiff's requests to amend his complaint be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

---

[2] This well-established principle likely explains why DYU did not include count one of plaintiff's complaint in its motion to dismiss.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:     Buffalo, New York
           December 11, 2023


                              _s/ H. Kenneth Schroeder, Jr._
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**